UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| XAVIER T. VIDOT, | : | |
| (aka UNDERSTANDING WALI ALLAH) | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 22-305JJM |
| | : | |
| RHODE ISLAND DEPARTMENT OF | : | |
| CORRECTIONS, et al., | : | |
| Defendants. | : | |

**REPORT AND RECOMMENDATION REGARDING PLAINTIFF VIDOT'S SECOND MOTION TO SUPPLEMENT AND MOTION FOR INJUNCTIVE RELIEF**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Plaintiff Xavier T. Vidot, a/k/a Understanding Wali Allah, is a prisoner in the custody of the Rhode Island Department of Corrections ("RIDOC") and an adherent of the "culture and way of life" called the Nation of Gods and Earths ("NOGE"), also referred to as "Five Percenters."[1] See generally ECF Nos. 1; 1-3. Following litigation initiated in 2014 by two other inmates,[2] RIDOC entered into a settlement agreement whereby it recognized NOGE as a "religion," as that term is used in the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1. Letourneau v. Rhode Island Dep't of Corr., C.A. No. 22-285JJM, 2023 WL 4156827, at *1 (D.R.I. June 23, 2023), adopted by text order (D.R.I. July 11, 2023); ECF Nos. 1; 1-2.

In August 2022, proceeding *pro se,* Plaintiff sued RIDOC and various RIDOC officials seeking money damages and injunctive/declaratory relief pursuant to RLUIPA and 42 U.S.C. § 1983, invoking the First (Free Exercise) and Fourteenth (Equal Protection) Amendments. ECF

---

[1] For background on NOGE, the reader is directed to Letourneau v. Rhode Island Dep't of Corr., C.A. No. 22-285JJM, 2023 WL 4156827 (D.R.I. June 23, 2023), adopted by text order (D.R.I. July 11, 2023).

[2] Letourneau v. Aul, 14-cv-421-JJM, consolidated with Vangel v. Aul, 15-cv-43-JJM.

No. 1. In his initial complaint, Plaintiff claimed that RIDOC failed to implement the mediated settlement agreement and, instead, engaged in religious discrimination to deter him and other inmates from embracing NOGE by targeting NOGE as a gang, and deterring his access to the Five Percenter Newspaper. ECF No. 1. Plaintiff alleged:

> RIDOC failed to notify him as a NOGE adherent of approaching "Honor[]Days" as it does with adherents of other religions, ECF No. 1 at 1, 9;
>
> His Five Percenter newspaper has either not arrived, arrived late and/or arrived without the envelope it was mailed in, id. at 5;
>
> On one occasion, his newspaper was defaced by Defendant Correctional Officer Vance Tyree when he wrote Plaintiff's name and cell number over pictures in the newspaper, id. at 7, 10, 11;
>
> He has been transferred to another cell block to separate him from another NOGE adherent, id. at 4; and
>
> RIDOC confiscated a handkerchief illustrated with the NOGE Universal Flag, id. at 6, 9.

In February 2023, Plaintiff supplemented this complaint pursuant to Fed. R. Civ. P. 15(d), adding three new defendants and additional allegations of religious discrimination and claims of retaliation for filing this case, for filing grievances and for NOGE affiliation. See ECF Nos. 7; 10. The first supplemental pleading adds the allegations that:

> In late August 2022, Defendant Correctional Officer James Thifault ("Thifault") ordered Plaintiff to remove a NOGE necklace, ECF 10 ¶ 6;
>
> In December 2022, Correctional Officer Thifault searched Plaintiff's cell and confiscated "altered" property – a television, tablet, headphones and a jack – and an extra pillow, id. ¶¶ 8-9; see also ECF No. 7-5 at 2.

In April 2023, the Court dismissed Plaintiff's claim for money damages against Defendants in their official capacities but otherwise left the original and supplemental complaints intact. Text Order of April 28, 2023.

More recently, Plaintiff filed his pending second motion for leave to supplement the complaint (ECF No. 39), which has been referred to me.  Because I recommend that one of the supplemental incidents Plaintiff seeks to add should not be permitted, effectively disposing of it as a new claim in this case, I am addressing the motion to supplement in this report and recommendation.  Most recently, Plaintiff filed a motion for a temporary restraining order and preliminary injunction.  ECF No. 40.  That motion is also referred to me; because it seeks injunctive relief, it also is addressed in this report and recommendation.  Recognizing Plaintiff's *pro se* status, the Court has liberally construed all of his filings.  See De Barros v. From You Flowers, LLC, 566 F. Supp. 3d 149, 152 (D.R.I. 2021).

I.      **Standard of Review for Supplementation**

Rule 15(d) of the Federal Rules of Civil Procedure allows the Court to grant leave to supplement a complaint with facts "setting out" a "transaction, occurrence, or event that happened after the date" of the complaint.  Fed. R. Civ. P. 15(d).  "Absent undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility, the motion [to supplement] should be freely granted."  Graham v. Grondolsky, Civil Action No. 08-40208-MBB, 2012 WL 405459, at *16 (D. Mass. Feb. 7, 2012) (internal quotation marks omitted), appeal dismissed, No. 12-1361 (1st Cir. Feb. 4, 2013); see U.S. ex rel. Gadbois v. PharMerica Corp., 809 F.3d 1, 7 (1st Cir. 2015) ("In the last analysis, a district court faced with a Rule 15(d) motion must weigh the totality of the circumstances, just as it would under Rule 15(a).").  However, when "the matters alleged in a supplemental pleading have no relation to the claim originally set forth and joinder will not promote judicial economy or the speedy disposition of the dispute between the parties, refusal to allow the supplemental pleading is entirely justified." Stow v. McGrath, No. 17-cv-088-LM, 2018 WL 1545701, at *3

3

(D.N.H. Mar. 2, 2018), approved, 2018 WL 1542324 (D.N.H. Mar. 28, 2018). As Fed. R. Civ. P. 18 and 20 make clear, "[u]nrelated claims against different defendants belong in different suits," in part "to ensure that prisoners pay the required filing fees," and that prisoners not avoid exposure to the "three strikes" provision of 28 U.S.C. § 1915(g). George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Rule 15(d) is not an open invitation to make "supplemental" filings that subject defendants "to a moving target of litigation" or "bombard the [c]ourt" with filing upon filing. Negron v. Turco, 253 F. Supp. 3d 361, 363 (D. Mass. 2017); see Lath v Oak Brook Condominium Owners' Ass'n, Civil No. 16-cv-463-LM, 2017 WL 2986334, at *2 (D.N.H. July 13, 2017) (Rule 15(d) cannot be used to add separate, distinct and new cause of action).[3] In evaluating a Rule 15(d) motion, "[e]verything depends on context." Gadbois, 809 F.3d at 7.

II.     **Analysis and Recommendation Regarding Supplementation**

Plaintiff's second supplemental complaint contains factual allegations related to two strip searches in March and April 2024. The March 2024 search was of Plaintiff and two other NOGE-adherent inmates, Devon Letourneau and Jayson Zeppieri, while on their way to the library.[4] ECF 39-1 ¶¶ 1-2. Plaintiff's contention that the search was "targeted" rests on his factual allegation that, on that day in Maximum Security, "only [NOGE] adherents were searched." Id. ¶ 2; see ECF No. 39-6. Plaintiff does not allege that any discipline or other adverse action accrued to him from this search, although the other two inmates were found to be in possession of prohibited items. ECF No. 39-1 ¶¶ 3-6. The April 2024 search occurred the day

---

[3] An *amended* pleading supersedes the original pleading and renders the original pleading a nullity. Korb v. Haystings, 860 F. App'x 222, 226 n.5 (3d Cir. 2021). A *supplemental* pleading adds post-complaint events to the operative pleading but does not supersede it. Id.; see Bourne v. Arruda, Civil No. 10-cv-393-LM, 2011 WL 2357504, at *18 (D.N.H. June 10, 2011) (supplemental pleading *adds* to the pleading while an amended pleading replaces the original pleading), aff'd, No. 13-1143 (1st Cir. Oct. 1, 2013).

[4] These two inmates are the plaintiff and intervenor respectively in another case alleging that RIDOC has violated the constitutional and contractual rights of NOGE religious adherents. Letourneau v. Rhode Island Dep't of Corr., C.A. No. 22-285JJM.

after Plaintiff presented his *pro se* argument in a "separate lawsuit" before the Rhode Island Supreme Court in Vidot v. Coyne-Fague, SU-2023-0286-A,[5] a case that Plaintiff does not allege is related in any way to NOGE. ECF No. 41 ¶ 14; see ECF No. 39-1 ¶ 7. Plaintiff alleges that these facts buttress his claim that RIDOC continues to discriminate against NOGE adherents and retaliated against him for arguing a case before the Rhode Island Supreme Court. ECF No. 39-1 ¶¶ 9-10.

Mindful of Plaintiff's *pro se* status, I find that Plaintiff's allegation regarding the March 2024 search is adequately related to his allegations of religious encroachment/discrimination against NOGE adherents, although Plaintiff lacks standing to bring such a claim on behalf of the other two inmates, who are pursuing their own claims. See Letourneau v. Rhode Island Dep't of Corr., C.A. No. 22-285JJM, 2024 WL 1381400, at *5 n.7 (D.R.I. April 1, 2024) ("A prisoner cannot bring a claim on behalf of other prisoners.") (internal quotation marks omitted), adopted by text order (D.R.I. Apr. 23, 2024). Further, as proposed by Plaintiff, supplementation by adding this incident to his pending complaint would not add new defendants so that the delay caused by the supplementation will be cabined. Further, while a strip search, standing alone, fails to state a claim because inmates do not have liberty interest to be free from strip searches, Kulhanek v. Griffith, No. 4:17-CV-02431-JAR, 2020 WL 2747301, at *6 (E.D. Mo. May 27, 2020), Plaintiff's claim based on this search is a supplementation to and therefore incorporates the allegations in Plaintiff's pending complaint and first supplementation; further, Plaintiff has added at least one fact (that all three of the inmates searched are NOGE adherents and no other inmates were searched) to support his conclusory allegation that the search was targeted on him because of his NOGE practice. Looking at the totality of Plaintiff's pleading – that is, this

---

[5] The public state court docket confirms that this case is unrelated to NOGE.

incident added to the allegations in the original complaint and the first supplementation – I find that this is enough to satisfy the requirements of Fed. R. Civ. P. 15(d). Accordingly, to that extent, Plaintiff should be allowed to proceed with the supplemental complaint with respect to this allegation, provided that he is cautioned that this is his second motion to supplement and that a practice of adding new facts and/or parties "indefinitely runs contrary to Rule 15(d)'s purpose to allow for the swift adjudication of disputes." Love v. Does 1-9, Case No. 3:17-cv-01036 (BRM) (DEA), 2021 WL 2134940, at *4 (D.N.J. May 26, 2021) (internal quotation marks and footnote omitted).[6]

By contrast, supplementation to add the allegation surrounding the April 2024 search would add an unrelated theory of retaliation for accessing the court in connection with an unrelated case. Stow, 2018 WL 1545701, at *3 (when supplemental pleading has no relation to original claim, refusal to allow supplemental pleading is "entirely justified") (internal quotation marks omitted). Granting Plaintiff's motion to that extent would not "promote the economic and speedy disposition of the entire controversy between the parties," and should be denied. Gadbois, 809 F.3d at 4 (internal quotation marks omitted).

### III. Standard of Review for Injunctive Relief

The purpose of interim injunctive relief, whether in the form of a temporary restraining order or a preliminary injunction, is to preserve the status quo and prevent irreparable harm

---

[6] The Court recently issued a recommendation in Letourneau v. Rhode Island Dep't of Corr., C.A. No. 22-285JJM, 2024 WL 4002814 (D.R.I. Aug. 30, 2024), that a motion to supplement be denied. That supplementation was based in part on allegations arising from discipline following what appears to be the same March 2024 search. Id. at *2. There are two pivotal differences between Plaintiff's motion to supplement and Mr. Letourneau's motion to supplement that have resulted in my differing recommendations: Plaintiff's supplemental pleading is laser focused on his claim that the search was targeted on him because of his religion. Consistent with this focus, and confirming that Plaintiff is proposing to add a fact based on the same issues already in suit in his case, Plaintiff brought his supplemental complaint against the already-joined Defendants in his case – that is, Plaintiff has not attempted to add any new defendants. By contrast, Mr. Letourneau's supplemental complaint mentions the search in passing but is focused on the discipline, with claims against mostly new defendants based on their involvement with the discipline.

before the merits of a case have been resolved.  See Francisco Sánchez v. Esso Standard Oil Co., 572 F.3d 1, 19 (1st Cir. 2009); Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam).  To the extent that an injunction seeks to do more than preserve the status quo, the motion is subject to heightened scrutiny; a mandatory injunction should not issue unless the facts and the law clearly favor the moving party.  Massachusetts Coal. of Citizens with Disabilities v. Civil Def. Agency & Off. of Emergency Preparedness, 649 F.2d 71, 76 n.7 (1st Cir. 1981) (mandatory preliminary injunctions should be granted only "when the exigencies of the situation demand such relief").  An injunction requires a relationship between the injury claimed in the motion and the conduct asserted in the complaint.  Devose, 42 F.3d at 471.  Assertions that are entirely different from the claims raised and relief requested in a complaint cannot provide the basis for a preliminary injunction.  Id.

   Once the necessary relationship between the motion and the complaint is established, the moving party faces the familiar four-part standard for preliminary relief: (1) a substantial likelihood of success on the merits, (2) significant risk of irreparable harm if the injunction is withheld, (3) favorable balance of hardships, and (4) lack of friction between the injunction and the public interest.  Harris v Wall, 217 F. Supp. 3d 541, 552-53 (D.R.I. Nov. 18, 2016) (standard is the same for temporary restraining order and preliminary injunction).  Likelihood of success on the merits is the most important factor.  Id. at 553.  Preliminary injunctive relief is an "extraordinary and drastic remedy."  Id. at 552.

   Pursuant to the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626, Plaintiff's status as a prisoner triggers an additional restriction on the availability of interim injunctive relief.  See Harris, 217 F. Supp. 3d at 553-54.  The PLRA provides that the court shall not enter a temporary restraining order or preliminary injunction unless it finds that the injunctive relief is

"narrowly drawn, extend[s] no further than necessary to correct the harm the court finds requires preliminary relief, and [is] the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Further, the court considering an interim injunction "shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief." Id. In addition, the court must respect principles of state and federal comity. Id. In interpreting the text of § 3626, courts must be guided by Congress's "ambient intent" to curb the involvement of the federal judiciary in the day-to-day management of prisons. Morales Feliciano v. Rullan, 378 F.3d 42, 50 (1st Cir. 2004). Under the PLRA, preliminary injunctive relief automatically expires after ninety days unless the court makes specific findings supporting an extension. 18 U.S.C. § 3626(a)(2).

IV.     **Analysis and Recommendation Regarding Injunctive Relief**

To support his claim for an injunction, Plaintiff relies on his Declaration (ECF No. 41), which states under oath (1) that one of Defendants, Correctional Officer Thifault, arbitrarily ordered him to remove a NOGE necklace in August 2022; (2) that, a month after the Notice of Service in this case, Thifault searched Plaintiff's cell and confiscated certain items for which Plaintiff received a "retaliatory" booking in December 2022, that was sustained on appeal; and (3) that Thifault booked Plaintiff for not closing a door in September 2023, which Plaintiff successfully challenged and received only a reprimand. ECF No. 41; see ECF No. 41-1. The Declaration also relies on Plaintiff's contention that in March and again in April 2024, Plaintiff was strip searched by unspecified persons, with the March search allegedly targeted only on three NOGE adherents[7] and the April search occurring on the day after he presented a *pro se*

---

[7] This is the search that I recommend *supra* may be added as a supplementation of the pleading.

8

argument in the Rhode Island Supreme Court in connection with an unrelated case.[8] Id.; see ECF No.41-2.

Invoking his right to "procedural due process," ECF No. 40 at 2, which protects him from being deprived of a protected liberty or property interest without constitutionally adequate process, Garcia-Gonzalez v. Puig-Morales, 761 F.3d 81, 88 (1st Cir. 2014), Plaintiff argues that an injunction is needed to protect him from these "acts of retaliation" for exercising his First Amendment right of free exercise of religion and accessing the Courts. ECF No. 40-2 at 4. Plaintiff asks the Court to issue an Order:

> (1) enjoining Defendants from "[d]epriving Plaintiff of his Right to procedural due process in the Inmate Discipline Process";
>
> (2) restraining Defendants from "[r]ecommending, suggesting, ordering or otherwise fabricating discipline reports"; and
>
> (3) "[a]ssigning, positioning, placing or having Defendant James Thifault man the post and/or work the cell Block in which Plaintiff is living as well as the visit room post."

ECF No. 40 at 2-3.

Plaintiff argues that he has shown a "great likelihood to succeed on the merits" because his claims have survived Defendants' motion to dismiss and because he has shown "factual evidence through his exhibits" reflecting Defendants' "violations." ECF No. 40-2 at 4. The first argument is unavailing because likelihood of success is not established by the fact that a claim survived screening and a motion to dismiss. Hamilton v. Moseley, Case No. 3:21-cv-2032-CAB-AHG, 2023 WL 7309452, at *2 (S.D. Cal. Nov. 6, 2023). As to Plaintiff's "factual evidence," having reviewed it carefully, I find that the incidents on which Plaintiff relies, whether viewed singly or collectively, are insufficient to demonstrate the requisite substantial likelihood of success on the merits of either a procedural due process claim or a retaliation claim.

---

[8] This is the search that I recommend supra may not be added as a supplementation of the pleading.

The first incident in issue, as Plaintiff avers, occurred in August 2022 when he was ordered by Thifault to remove his NOGE necklace to comply with a generic rule prohibiting the wearing of jewelry in the visiting room, and that he received no discipline. He does not allege that the necklace was confiscated or damaged. To support the averment that this was "arbitrary," Plaintiff claims that this rule had not been enforced during prior visits. ECF No. 41 ¶ 3. His evidence also reveals that, in response to his grievance, RIDOC advised him that it considered, investigated and rejected Plaintiff's claim that this was retaliation. ECF No. 7-4. In so doing, RIDOC acknowledged to Plaintiff in writing that Plaintiff's NOGE necklace is deemed to be "religious," as well as that Plaintiff has the right freely to exercise his religious beliefs, but confirmed that there is a rule that generically prohibits the wearing of any jewelry (except a wedding band) during visits. Id. This incident preceded by several months Thifault's Notice of Service of this case. Beyond Plaintiff's conclusory allegation, Plaintiff presents no evidence that this incident was retaliatory.

The second incident occurred later in 2022, in December, approximately a month after the Notice of Service of this case on Thifault; this arguable temporal proximity appears to be the sole basis for Plaintiff's assertion that this incident was retaliatory. See ECF No. 41 ¶¶ 4-7; see also ECF Nos. 7-5; 10. Specifically, Plaintiff claims that he was booked following a cell search by Thifault that turned up "3 altered Electronics and 1 extra pillow," including a television that was a "fire hazard," a tablet with a screw missing, headphones "wrapped and held together by plastic baggies," and a cracked jack that appeared to "have been pulled to be separated." ECF No. 7-5 at 2, 41 ¶¶ 4-7. The allegedly altered items were logged into evidence for the hearing. ECF No. 7-5. In defense, Plaintiff pled not guilty, pointing out that the pillow was medically approved. Except for the pillow, however, Plaintiff acknowledged the problems with his

10

property (including a paper inside the TV and the tablet with the lost screw) but argued that this was the result of wear and tear. ECF No. 7-8. Plaintiff was afforded a hearing, including a warden's review, and was sanctioned with loss of privileges and the loss of eight days of good time. ECF No. 7-9 at 2.

The third incident was nine months later, in September 2023, when Plaintiff was booked by Thifault for refusing to follow an oral instruction to close an exit door. Plaintiff alleges Thifault's narrative supporting the booking was false. ECF No. 41 ¶ 8. As with the other incidents, Plaintiff received a hearing; at the hearing, the hearing officer reviewed video from surveillance cameras, which corroborated at least part of Thifault's narrative. According to Plaintiff, RIDOC decided that the sanction "was dropped . . . to a reprimand." ECF Nos. 41 ¶¶ 8-10; 41-3. Plaintiff relies only on speculation for the proposition that this incident was retaliatory.

The last two incidents are the 2024 strip searches discussed *supra*. Plaintiff claims that the March 21, 2024, strip search was retaliatory because it was targeted only at three NOGE adherents who were walking together. ECF No. 39-1 ¶ 2. Plaintiff received no discipline, but the other two inmates were disciplined, one for possession of dangerous contraband (large heavy-duty staples). ECF No. 39-2. Plaintiff attributes the April strip search not to NOGE, but to retaliation in connection with the unrelated case that he had argued in the Rhode Island Supreme Court the day before.[9] Plaintiff's declaration states his belief that each of these incidents was retaliatory. ECF No. 41 ¶¶ 1, 13-14.

---

[9] Because it is unrelated to the matters in issue in this case, Plaintiff's reliance on the April 2024 strip search also fails as a foundation for an injunction because it transgresses the settled principle that a motion for injunctive relief to address access to the courts in a civil case presenting entirely unrelated claims should be denied because the relief requested is not based on the claims in the case, but rather encompasses an entirely new claim. Briggs v. Amado, C.A. No. 22-31-WES, 2024 WL 3201409, at *2 (D.R.I. June 26, 2024); see Guillen v. Thompson, No. CV 08-1279-PHX-MHM (LOA), 2009 WL 2513501, at *6-7 (D. Ariz. Aug. 14, 2009) (denying preliminary injunction based *inter alia* on denial of access to court because unrelated to underlying claim of inadequate medical care).

Focusing first on procedural due process, I find that Plaintiff's evidence establishes not only that he received ample due process in each instance when he was accused of misconduct but also that none of these incidents resulted in a deprivation that is sufficient as a matter of law to establish substantial likelihood of success on the merits of a due process deprivation claim. See, e.g., Moore v. Pemberton, 110 F.3d 22, 23 (7th Cir. 1997) (per curiam) (verbal reprimand did not cause inmate to lose any liberty or property, "so the due process clause simply does not apply"); Kulhanek, 2020 WL 2747301, at *6 (inmates do not have liberty interest to be free from strip searches); Smith v. Thompson, Civil Action No. 3:09-48-DCR, 2010 WL 2923197, at *10 (E.D. Ky. July 23, 2010) (inmate failed to identify a protected property or liberty interest in wearing a particular piece of jewelry); Martinez v. Menchaca, Civil Action No. C-08-197, 2009 WL 3334896, at *9 (S.D. Tex. Oct. 14, 2009) (prisoner failed to show protected interest in possession of property that had been altered from its original condition, meeting definition of "contraband" under prison policy). Rather, from the procedural due process perspective, Plaintiff's incidents collectively establish prison management through searches and measured discipline meted out based on constitutionally adequate process to address Plaintiff's conduct and to achieve institutional safety by enforcing rules about jewelry, closing exit doors, and confiscation of dangerous items.

I also find that Plaintiff's evidence falls short of proving that the pattern of these incidents is consistent with retaliation against Plaintiff for practicing NOGE and/or for prosecuting this case. Foundational to this finding is that Plaintiff has presented little beyond speculation[10] to establish the pivotal causal connection between his constitutionally protected

---

[10] Thus, as to the incident for which Plaintiff relies on the temporal proximity (one month) between the protected activity and the allegedly retaliatory act, such evidence standing alone would be sufficient circumstantial evidence of causation only if it is "unusually suggestive." Mattei v. Dunbar, 217 F. Supp. 3d 367, 377 (D. Mass. 2016) (internal quotation marks omitted). I do not find that Plaintiff has presented any facts related to temporal proximity

12

conduct and the adverse actions against him.  See Chase v. Walker, Nos. 12-58-M, 11-483-M, 2012 WL 3776344, at *6 (D.R.I. July 31, 2012) (prisoner must show that retaliatory act would not have occurred but for his protected activities).  While there is no question that prisoners should not be retaliated against for exercising their First Amendment rights, "[b]ecause prisoner retaliation claims are easily fabricated[ ] and . . . pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, courts must insist that such claims are bound up in facts, not in the gossamer strands of speculation and surmise."  Harmon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011) (internal quotation marks omitted).  Mindful of this guidance, I find that Plaintiff has failed to demonstrate that he is likely to succeed on the merits of his claim that each (or any) of these incidents was retaliatory.

      Turning to irreparable harm, Plaintiff contends simply that the "continuing deprivation of constitutional rights constitutes irreparable harm."  ECF No. 40-2 at 3.  Plaintiff presents nothing to suggest that the incidents of which he complains have inflicted any injury or that they have deterred him either from the practice of NOGE or from prosecuting this case, nor has he offered any evidence to prove that his adherence to NOGE will expose him in the future to retaliatory searches and false bookings unless an injunction issues.  Apart from the lack of merit in the underlying claims, this is an independent reason why the requested injunction should not issue.  Tassone v. Salisbury, C.A. No. 23-00217-WES, 2023 WL 4557734, at *2 (D.R.I. July 17, 2023) (interim injunction should be denied when claim of potential future retaliation is supported by "speculative and subjective apprehensions of the possibility of future unspecified retaliation at

---

that are "unusually suggestive" in the circumstances here.  Similarly, Plaintiff's proof that the March 2024 search was retaliatory rests only on the fact that the three inmates who were together and were searched at the same time are all NOGE adherents.  Effectively therefore, this amounts to a single search, with little more than speculation that it was triggered by retaliation for NOGE and not to achieve legitimate penological purposes.  Morales v. Foster, Case No. 17-cv-234-SM, 2019 WL 441967, at *3 (D.N.H. Jan. 3, 2019), adopted sub nom. Morales v. NH Att'y Gen., 2019 WL 440564 (D.N.H. Feb. 1, 2019).

some future indefinite time"), adopted by text order, (D.R.I. Aug. 7, 2023); Smolen v. Dildine, No. 11-CV-6434 CJS, 2011 WL 6030112, at *2 (W.D.N.Y. Dec. 5, 2011) (plaintiff contends that "it is likely that he will suffer retaliation for his bringing of lawsuits against [prison] staff. However, [p]laintiff's concern on this point, even if sincere, is speculative, and is therefore not sufficient to establish irreparable harm."). As this Court has held, even if there were a strong likelihood of success on the merits, "[a]bsent a more compelling and non-speculative showing [of irreparable harm], the Court has no legal or factual grounds to issue the injunction requested by Plaintiff." Tassone, 2023 WL 4557734, at *2.

Plaintiff fares no better with the third and fourth prongs of the injunction inquiry because he cannot show that the balancing of harm or the public interest require entry of injunctive relief. At bottom, Plaintiff asks the federal Court to interfere with the judgment of RIDOC officials regarding how to assign staff within the prison despite no factual evidence they have deterred his practice of NOGE or impeded his access to the Court to litigate this case. See Cutter v. Wilkinson, 544 U.S. 709, 717 (2005) (courts entertaining prisoner religious practice cases should accord due deference to the experience and expertise of prison and jail administrators). On this record, there is no basis to intrude on the inner workings of the institution, a subject area that requires strong deference by the Court. See Letourneau v. Aul, C.A. No. 14-421L, 2015 WL 5167854, at *4 (D.R.I. Sept. 3, 2015). Thus, "the public interest does not favor the granting of the . . . [m]otion as it would undermine the authority of . . . [RIDOC] and would also unduly interfere with [its] day-to-day operation[s]." Tassone, 2023 WL 4557734, at *2. Nor would an injunction in these circumstances meet the PLRA's requirement that the court must give "substantial weight to any adverse impact on public safety or the operation of a criminal justice

system caused by the preliminary relief and shall respect the principles of comity." 18 U.S.C. § 3626 (a)(2).

Based on the foregoing, I recommend that Plaintiff's motion for injunctive relief be denied.

## V.     Conclusion

Plaintiff's motion to supplement (ECF No. 39) should be granted in part and denied in part. It should be granted in so far as Plaintiff should be allowed to supplement the complaint[11] with the allegations pertaining to the March 2024 strip search. In all other respects, the motion should be denied because the allegations in the supplemental complaint are unrelated to this case. Plaintiff's motion for a temporary restraining order and preliminary injunction (ECF No. 40) should be denied.

Any objections to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen days of service of this report and recommendation. See Fed. R. Civ. P. 72(b); DRI LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See Brenner v. Williams-Sonoma, Inc., 867 F.3d 294, 297 n.7 (1st Cir. 2017); Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
September 23, 2024

---

[11] Defendants' response to the supplemental complaint will not be due unless and until the Court adopts my recommendation. Once that occurs (if it does), the response will be due in accordance with the pertinent procedural rules.